# FERTITTA *v.* BAY SHORE DEVELOPMENT CORPORATION ET AL.

[No. 374, September Term, 1971.]

*Decided June 13, 1972.*

The cause was argued before HAMMOND, C. J., ▮ and BARNES, MCWILLIAMS, SINGLEY, SMITH and DIGGES, JJ., and JAMES MACGILL, Chief Judge of the Fifth Judicial Circuit, specially assigned.

*Charles C. W. Atwater,* with whom were *David A. Carney, Dwight C. Stone* and *Mylander, Atwater, Carney & Stone* on the brief, for appellant.

*Marcus J. Williams* and *Jack Dunlap* for appellees.

SMITH, J., delivered the opinion of the Court.

This is the second trip to this Court of this case which had its origin in a surveyor's error prior to World War II. That error caused construction by the State Roads Commission (the Commission) of the "Ocean Highway" from Ocean City to Fenwick Island at a place other than in the location described in the deeds and its plats.[1] *See Fertitta v. Bay Shore Dev. Corp.,* 252 Md. 393, 250 A. 2d 69 (1969), and the plats at pages 405 and 406 for a better understanding of this controversy. We shall repeat only such facts from the earlier case as are necessary to an understanding here.

Appellant, Rosemary Fertitta (Fertitta), was the appellant in the earlier case. Bay Shore Development Corporation (Bay Shore) and Skyline Development Corporation (Skyline) were the appellees there as they are here.

In 1940 Fertitta's father conveyed to the Commission

---

[1]. "Ocean Highway" and "Coastal Highway" refer to the same road.

part of Lots 1 and 2 of Block 87 on the plat recorded among the land records of Worcester County in 1891, to which reference will be made from time to time. His land lay immediately east of Philadelphia Avenue as laid down on that plat. It was intended that the Ocean Highway coincide with and extend east and west from Philadelphia Avenue as shown on that plat. As constructed, the west side of Ocean Highway in the area of the Fertitta land was just east of Philadelphia Avenue as shown on the plat.

In 1952 Fertitta's father made a second deed to the Commission for the Ocean Highway. That time it was by a proper description. Prior to either conveyance to the Commission, Fertitta's father owned to the center of Philadelphia Avenue under the provisions of Chapter 684 of the Acts of 1892, now codified as Code (1957, 1966 Repl. Vol.) Art. 21, § 107. The Commission did not convey back to Mr. Fertitta that which had been mistakenly conveyed to it by him. The second deed did recite that it was "in substitution for and in lieu of" the earlier deed.

In the earlier action Fertitta sued Bay Shore in ejectment. The area then in dispute was the sliver of land between the Coastal Highway as constructed and the east side of Philadelphia Avenue plus the east half of the bed of Philadelphia Avenue in front of Lots 1 and 2. We held Fertitta possessed of an equitable title, but not of legal title. Therefore, we said, she could not prevail in ejectment. We remanded the case without affirmance or reversal for further proceedings, stating that under Maryland Rule 515 it should be transferred to equity. This was accomplished. The chancellor then ruled against Fertitta except for the sliver varying in depth from .3 of a foot on the south end to 1.9 feet on the north end between Philadelphia Avenue and Ocean Highway. There was no cross-appeal. Thus, the controversy here is relative to the bed of the east half of Philadelphia Avenue adjacent to Lots 1 and 2. We shall reverse the adverse ruling relative to the east half of Philadelphia Avenue.

This case may be somewhat more easily understood by reference to its cast of characters:

Frank Fertitta—acquired land by two deeds, the first in 1936 and the second in 1938. Father of appellant, Rosemary Fertitta.

Rosemary Fertitta—inherited land from her father.

William B. S. Powell—onetime owner of a much larger tract including land conveyed to Frank Fertitta by Lewis C. Merryman, trustee, in a chancery proceeding in Worcester County and that conveyed to Bay Shore on the east side of Philadelphia Avenue by M. Elizabeth Powell, trustee in a chancery proceeding in Worcester County. *See Merryman v. Bremmer,* 250 Md. 1, 241 A. 2d 558 (1968), for an account of a sale of the Powell land with particular reference to Lots 7 and 8 in Block 87.

Bay Shore—one of the appellees. Formerly owned land on the west side of Philadelphia Avenue. Grantee in quitclaim deed from the Commission of a portion of the bed of Philadelphia Avenue including land here in dispute. A Jenkins corporation.

Skyline—an appellee here and another Jenkins corporation. Land here in dispute was conveyed to it by Bay Shore.

Cullen S. Jenkins—father of Charles Jenkins and father-in-law of John Rolfe. Grantee in deed from M. Elizabeth Powell, trustee, of land on the east side of Philadelphia Avenue and a portion of the bed of Philadelphia Avenue. Also grantee in deed from Marion E. Mumford of certain land lying between the Coastal Highway as constructed and Philadelphia Avenue as laid down on the plat together with the easternmost half of the bed of Philadelphia Avenue in that area.

President and promoter of Bay Shore. Grantor in deed to Bay Shore including land acquired from Powell and Mumford.

Charles Jenkins—present president of Bay Shore and Skyline. He succeeded his father upon his father's death.

John Rolfe—married a sister of Charles Jenkins, a daughter of Cullen S. Jenkins. Grantee in deed from the Commission of a portion of Philadelphia Avenue. It was his title problems which triggered the request to the Commission for a quitclaim deed for a part of Philadelphia Avenue.

In the earlier opinion we enumerated a number of matters which might be considered by the chancellor upon the transfer to the equity side of the docket in determining whether Bay Shore had such notice of the Fertitta situation as to make it other than a bona fide purchaser for value from the Commission. One specific point was "whether community knowledge of the Philadelphia Avenue—Coastal Highway situation reached Bay Shore's officers in such manner as to put them on notice of the second Fertitta deed."

At the second hearing the chancellor could not "find in the record any evidence that Bay Shore had any actual knowledge of the prior equities of Fertitta." In finding that Fertitta had not met her burden of proof, he further said:

"I find no evidence that any attorney had knowledge as to the divergence of the Coastal Highway and the Philadelphia Avenue situation specifically as it related to Block #87, and certainly there is no evidence that any attorney, prior to Mr. Williams in 1960, imparted to Bay Shore any knowledge of the Philadelphia Avenue divergence adjacent to Block #87. Indeed, one would have to indulge in pure speculation to conclude that Bay Shore had knowledge of

any circumstance that would put an ordinarily prudent person on inquiry."

Reference to the plat appended to this opinion, which the reporter is directed to reproduce, will show a sliver of land between the east side of the Ocean Highway as constructed and Philadelphia Avenue in Block 90. This land was conveyed by Marion E. Mumford to Cullen S. Jenkins and wife by deed dated May 3, 1957. It is described as "being situate on the westerly side of the Coastal Highway," as "comprising the westernmost parts" of Lots 1 to 6, inclusive, in Block 90, and as "being the parts of said lots lying between the westernmost line of said Coastal Highway and the easternmost line of Philadelphia Avenue as shown on said plat." A metes and bounds description is given showing a depth of 7½ feet along 31st Street, tapering down to a depth of 4 feet at 30th Street. In the "together" clause, after the usual language, appears:

> "and particularly all the right, title, interest and estate of the grantor herein to the portion of the bed of Philadelphia Avenue as shown on said plat lying westerly of the land hereby conveyed and between the southerly line of North 31st Street and the northerly line of North 30th Street."

In the contract of sale Miss Mumford agreed to sell "all lands located between 30th and 31st street in block 90 on the west side of the present beach highway and in front of that [sic] block 89."

William H. Scott, a practicing attorney in Berlin in Worcester County, was called as a witness by Fertitta. He said he prepared the deed from Mumford to Jenkins and wife at the request of Cullen Jenkins who was the one who "made [him] familiar with this transaction." Scott was asked if Jenkins had any plats at that time. He replied:

> "A. Yes, I believe he did. I would have had to

have had a plat in order to draw the description which is in that deed, and I believe he had a plat which he showed me which showed the lines of the Coastal Highway and the lines of Philadelphia Avenue."

He recalled that the plat covered more than one block, but did not know whether it covered Block 87. Scott had been acquainted with the actual divergence between the Coastal Highway and Philadelphia Avenue for "probably 10 years or longer" prior to the preparation of the deed in 1957. There was placed in evidence a letter from Scott to Owen J. Mumford, the agent for Marion Mumford. It read in pertinent part:

"I enclose a deed to be signed by Marion transferring to Cullen S. Jenkins and wife the parts of lots 1, 2, 3, 4, 5 and 6 in Block 90 North, which lie westerly of the Coastal Highway. Please read the description of the property carefully to see if the deed describes properly the land being sold, and note that in the together clause Marion transfers all her right, title and interest in the part of the bed of Philadelphia Avenue on the Sinepuxent Plat lying between North 30th and North 31st Streets.

Scott was asked whether there was a requirement in the Code relative to recordation of plats of the Commission, to which he replied in the affirmative. The record then is:

"Q. And those plats as recorded now and as recorded in 1957 showed the lines of the Coastal Highway as it now exists, did they not? A. Yes, they did; at least one in this chain of title Block #90 did. That was given in 1952 by Mrs. Mumford to the State, and it showed the highway as it had been constructed, the right-of-way lines as the highway had been constructed."

Almost simultaneous with the deed from Mumford to

Cullen Jenkins and wife was a deed from M. Elizabeth Powell, trustee, to Cullen Jenkins and wife. The deed was actually dated June 12, 1957. It recites, however, a private sale to Jenkins, reported "in the Trustee's thirteenth report of sale," ratified by the Circuit Court for Worcester County on May 20, 1957. The source of title recited for Powell in that deed is the same source as that recited in the deed to Frank Fertitta, which also came from Powell's estate. The deed recites the conveyance of "all the right, title and interest of the said William B. S. Powell, deceased, and of those claiming by, through or under them, in and to all those lots or parcels of land, beds of streets and avenues * * * located on the westerly side of the Coastal Highway * * * and bounded in part by the westerly side of said Highway, bounded on the south by the center line of North 29th Street, bounded on the North by the center line of North 32nd Street and on the West by the waters of Sinepuxent Bay." Reference to the attached plat will show a part of the land thus conveyed. It began "at a point formed by the intersection of the center line of North 29th Street with the westerly line of the said Coastal Highway." It then followed that line "to the southwesterly corner of Lot No. 2 in Block 87 * * * where the easterly line of said Philadelphia Avenue crosses over the westerly line of the Coastal Highway." [2] From there the description proceeds "in a westerly direction, by and with the southerly line of said Lot No. 2 * * * for a distance of 30 feet to a point formed by the intersection of the southerly line * * * so extended with the center line of said Philadelphia Avenue." It then runs in a northerly direction with the center of Philadelphia Avenue to the center line of North 31st Street. Blocks 88 and 89 fronting on Philadelphia Avenue were embraced within the deed. It recited that it was intended to convey "all of Philadelphia Avenue * * * included within the metes and bounds." The record does not tell us what, if any, understanding

---

2. As a matter of fact, the point where the Ocean Highway crossed over to Philadelphia Avenue seems to be a bit farther south on Lot 3.

had previously been reached by the Powell estate with the Commission. It will be noted by an examination of the original right-of-way plat reproduced in 252 Md. 405 that the Ocean Highway was originally intended to take the front part of each lot in Block 88.

In 1959 Cullen Jenkins and wife conveyed to Bay Shore a number of parcels of land including that acquired from Powell and Mumford, using the same descriptions.

In 1964 Bay Shore contracted to sell a tract of land to Skyline. The description used in the area here in controversy was the same as in the Powell deed. The contract was executed on behalf of both corporations by Charles Jenkins as president. The actual conveyance in 1965 started at 29th Street and the Ocean Highway. It then ran "by, with and binding upon the westerly property line of said Ocean Highway" to 31st Street, so that it actually included within its area not only the area here in dispute, but the sliver of Lots 1 and 2 of Block 87 between Philadelphia Avenue and the Ocean Highway to which we have previously alluded and which was not in the conveyance from the Commission to Bay Shore. It purported to be in accordance with a 1965 survey.

Background for the conveyance from the Commission to Bay Shore was supplied by Messrs. Marcus Williams and Charles Jenkins. Mr. Williams said he examined title to land owned by Rolfe. Rolfe desired to make a mortgage for the purpose of building a home. Rolfe owned lots on the west side of Coastal Highway. Mr. Williams found a problem "because of this old Sinepuxent Beach Plat and the overlap." He reported this to Rolfe. Ultimately, a meeting was held between Messrs. Cullen Jenkins, Rolfe, and Williams for the purpose of Mr. Williams' explaining to Mr. Jenkins what he found. As Williams put it, he "explained to Mr. Jenkins what [he] had explained to Mr. Rolfe about the old bed of Philadelphia Avenue that cut through that land that he had bought there. [Jenkins] instructed, as [Williams] remember[ed] it, he instructed Mr. Rolfe to work with [Williams] in getting

it straightened out." The Charles Jenkins' version of the matter was:

"A. * * * Bay Shore conveyed the two lots to Rolfe, and Mr. Rolfe went to the Exchange and Savings Bank in Berlin and requested a loan to build this building. They told him to go ahead and start, so he started. As I recall, the building was maybe twenty-five or thirty percent complete when he received a call from Mr. Williams, who was the chief legal officer of Exchange and Savings Bank in Berlin, telling him that there was an apparent defect in the title, that the State of Maryland through the State Roads Commission owned a portion of frontage, but that there was nothing to be concerned about since the State Roads Commission had no desire to hold anyone up or charge exorbitant fees or anything of this nature; that it was as a result of the mislocation of the old bed of Philadelphia Avenue, and that he would surely straighten it out for him.

"Q. This would have been during 1960? A. I would say it was in the fall of 1960. The conversation then went from Mr. Rolfe to my father telling him of this problem. It is the first time my father had been aware or indicated he had been aware of any problem. He then contacted Mr. Williams and asked Mr. Williams to explain to him what the problem was. Mr. Williams did so. When I say 'we,' I was part of this thing, decided that since Mr. Williams was going to straighten the matter out for Mr. Rolfe through the State Roads Commission that perhaps he could get the northern part of our property straightened out. This included—

"Q. Go ahead. A. This included not only the area of 29th and 30th Streets, but I believe all the way up. So, that is the reason that there

was a simultaneous deed from the State Roads Commission to Bay Shore and to Rolfe.

"Mr. Williams, at that time, did not represent Bay Shore. The lawyer that probably had represented Bay Shore or Mr. Cullen Jenkins most frequently would have been either Senator Sanford or, now, Judge Prettyman. This was the first work Mr. Williams had ever done for Bay Shore or for my father.

"Q. Now, that is what led up to the deed and resulted in simultaneous deeds from State Roads Commission, one to Mr. Rolfe and one to Bay Shore? A. Yes."

Williams negotiated with the Commission on behalf of Rolfe and Bay Shore. He submitted deeds to the Commission which it did not execute. It ultimately had the Attorney General prepare deeds, one to Rolfe and one to Bay Shore. The quitclaim deed to Bay Shore conveyed, in three separate parts, portions of the bed of Philadelphia Avenue. Parcel No. 2 was that part of Philadelphia Avenue between Blocks 87 and 88 and North 29th and North 30th Streets. The sum paid the Commission was $472, all of which it is said was paid by Rolfe. In a letter written at the time the Commission said this represented "the cost in preparing the * * * deeds and completing the transfer." It broke down this charge as $368 chargeable against the conveyance to Bay Shore and $104 chargeable to the conveyance to Rolfe. This charge brought a protest as to the amount. Rolfe requested an itemized list of the expenses. He was advised by the Commission that it was "perfectly willing to prepare an itemized list of the expenses incurred in [the] matter; however, [he might] wish to reconsider [his] request in view of the fact that a cursory check with [the person responsible] indicate[d] that less than half the time spent in preparing [the] transfer [was] included in the $472." The money was paid and the deeds recorded, thus helping to produce this litigation.

Fertitta makes a strong argument that Bay Shore can-

not be a bona fide purchaser for value when only $472 was paid to the Commission, and that not by Bay Shore, when the fair market value of the land here in litigation, "according to the testimony of the two recognized experts produced at the prior trial, is $18,500." That is an appealing argument. *See* 2 *Pomeroy's Equity Jurisprudence* § 600 (5th ed. Symons 1941) ; 3 *Pomeroy, op. cit.* §§ 747 and 785b; 5 Tiffany, *Law of Property* § 1301, at 91 (3d ed. Jones 1939) ; and 8 Thompson, *Real Property* § 4319, at 400 (1963 Repl. Grimes). Unfortunately, however, there was no finding of fact as to the fair market value of the property and the testimony at the prior trial ranged from no value "other than the fact of its nuisance to Mr. Jenkins" up to the $18,500 figure mentioned. The "no value" figure is interesting when one considers that Cullen Jenkins in 1957 paid Miss Mumford $3,500 for one-half of the bed of Philadelphia Avenue in front of six lots (there are two here) and a sliver ranging from 7½ feet to 4 feet in depth as contrasted with a depth of 1.9 feet to .3 of a foot here.

Of significance here is a colloquy on redirect examination of Mr. Carl Wyant, Jr., Chief of the Bureau of Right-of-Way Administration of the State Roads Commission. It was he with whom negotiations were carried on for the quitclaim deed from the Commission.

> "Q. Now, you were also asked if it was the policy of the State Roads Commission to Quitclaim the bed of Philadelphia Avenue to owners in the area. Wasn't that policy limited to quitclaiming to owners of the adjacent property who would own the bed of the street? A. Our policy, not only in this particular case here, but our policy is to eliminate, where they are made by us—
>
> "Q. What I am talking about, here was the bed of Philadelphia Avenue which you had originally intended to take. Now, Mr. Williams asked you if it wasn't the policy of the Commission to convey the bed of Philadelphia Avenue

to owners; wouldn't that be to adjacent owners who own property adjacent to Philadelphia Avenue? You wouldn't convey it to anybody else, would you?

"(Objection.)

* * *

"(The Court) I think he can testify as to the policy. There is testimony here this conveyance was made without consideration except for the cost incident to preparation of the deed and the plats, and I think the question is perfectly all right.

"Would you have conveyed that bed of Philadelphia Avenue to a stranger or to someone who did not own adjacent property without a consideration?

"(The Witness) No, Your Honor. As a matter of fact, we wouldn't convey it to a stranger for consideration. Our purpose is to eliminate split strips."

The deed prepared by Mr. Williams on behalf of Bay Shore and submitted to the Commission called for conveyance with a description by metes and bounds, courses and distances, of the area lying between the northwest side of Ocean Highway and the northwest side of Philadelphia Avenue from 29th Street to 32nd Street. This would have included the bed of 30th and 31st Streets. The actual conveyance from the Commission to Bay Shore did not include 30th Street. Wyant described the descriptions in the deeds as submitted as "wholly incorrect and could not be used in this transfer."

John L. Sanford, a practicing member of the Worcester County Bar, was produced as a witness by Fertitta. At one point the record is:

"(The Court) Do you of your own knowledge know of other corrective deeds, similar to the second deed given by Mr. Fertitta to the State Roads Commission, confirmatory deed, if you

will, were there a series of them to your knowledge after this error was discovered; if you don't know, you don't know.

"(The Witness) Your Honor, I don't recall. I think the man who took it over at that time, if I may answer it this way, the entire error was discovered prior to the Collins suit by Mr. Louis Merryman, who then represented the Powell Estate, and to my knowledge he was attempting to obtain certain deeds from certain people. What he ever did, I cannot recall."

Senator Sanford had prepared some of the conveyances in the Bay Shore chain of title. He did not represent Cullen Jenkins in the acquisition from the Powell estate. A short time earlier Senator Sanford had testified about litigation that took place between "Collins and Mr. Hutsel" relative to Lot 10 in Block 87 in which he was involved and in which "[i]t was revealed that the lines of the State Roads plats were incorrect, that the westerly property line there coincided with the easterly property line of Philadelphia Avenue."

Three practicing attorneys in Worcester County, Messrs. Scott, Williams, and Sanford, all testified as to their long standing knowledge of the mislocation of Ocean Highway and the consequent difficulties thus produced.

The applicable law has been most recently summed up for the Court by Judge Barnes in *Williams v. Skyline Dev. Corp.*, 265 Md. 130, 164-65, 288 A. 2d 333 (1972), a case involving one of the Jenkins corporations which is also involved here. In determining whether a purchaser had notice of any prior equities or unrecorded interests, so as to preclude him from being entitled to protection as a bona fide purchaser, the rule is that if he had knowledge of circumstances which ought to have put a person of ordinary prudence on inquiry, he will be presumed to have made such inquiry and will be charged with notice of all facts which such an investigation would in all probability have disclosed if it had been properly pur-

sued. A purchaser cannot fail to investigate when the propriety of the investigation is naturally suggested by circumstances known to him. If he neglects to make such inquiry, he will be guilty of bad faith and must suffer from his neglect. That which is sufficient to excite inquiry is notice of such facts as would lead an ordinarily prudent man to make an examination. Notice to an attorney is notice to his client. A title examiner is charged with notice of whatever appears in the land records in the chain of title to the property involved. *See also* 4 *American Law of Property* § 17.11, at 565-66 (1952) ; 8 Thompson, *op. cit.* § 4323, at 422-23 and § 4325, at 428-29 ; and *Price v. McDonald,* 1 Md. 403, 422, 54 Am. Dec. 657 (1851).

The chancellor here rested his opinion on the fact that there was no showing that Jenkins or Bay Shore had actual notice of the second Fertitta deed. It will be seen from *Price* and an examination of the authorities cited in *Williams* that actual notice is not the test.

Here we have Cullen Jenkins, the predecessor in title of Bay Shore and the president and principal stockholder of Bay Shore, in the spring of 1957 with a plat in his possession which showed the divergence of Ocean Highway from Philadelphia Avenue. He proceeded to acquire from Mumford for $3,500 the sliver of land in the block immediately across 30th Street from the Fertitta land which was between Ocean Highway as constructed and Philadelphia Avenue. He had his attorney include in that conveyance the bed of Philadelphia Avenue adjacent to that sliver. That attorney testified that in 1952 Miss Mumford had given a deed to the Commission by a correct description. What was done by the Commission to vest in her that which the Commission mistakenly acquired does not appear.

Almost simultaneous with the acquisition from Mumford was the Powell transaction. Since there must be a lapse of time for publication of an order *nisi* and the consequent running of time, it follows that a sale ratified on May 20, 1957, was reported to the court not less than

about a month prior to that time. The Powell transaction was a private sale, and, therefore, presumably a negotiated transaction. The letter we have quoted from Scott to Mumford was dated April 27, 1957. It thus follows that the two acquisitions were at roughly the same time. Jenkins acquired from the Powell estate all of Blocks 88 and 89 and all of Philadelphia Avenue between the Ocean Highway and Blocks 87 and 88 from 29th Street down to the Fertitta land. When the deed description reached the Fertitta land it very carefully went to the center of Philadelphia Avenue. From that point on it was the half of Philadelphia Avenue closest to Blocks 88 and 89 which was acquired from the Powell estate. Thus, by June of 1957 Jenkins had acquired from those persons whose land adjoined Philadelphia Avenue all of the bed of that street between 29th and 31st Streets except for that immediately in front of the Fertitta lots. Jenkins was no stranger to Ocean City nor to real estate transactions.

We conclude that the sum total of all of the facts and circumstances here as known by Jenkins himself were such as to put an ordinarily prudent person upon inquiry. When there is added to that the acknowledged cognizance of practicing attorneys in the area of the misplacing of the Ocean Highway and the problems thus generated, the conclusion is inescapable that Bay Shore cannot claim to be a bona fide purchaser for value. If it was not a bona fide purchaser for value, then the quitclaim deed from the Commission vested it with a title subject to any outstanding equities. We have heretofore held in *Fertitta v. Bay Shore Dev. Corp.*, 252 Md. 393, 404, "that the effect of the second deed from Fertitta's father to the Commission was to vest equitable title in Mr. Fertitta to the land improperly conveyed in the first deed to the Commission." Therefore, Bay Shore took and Skyline holds title subject to the Fertitta equitable title. They should be directed to convey to Fertitta.

Fertitta urges in her brief that "the damages sustained by the Appellant have been fully established by unre-

butted testimony" and in effect suggests that we should draw a conclusion as to what those damages are and then "remand for the entry of a decree for such damages pursuant to Maryland Rule 875." We would prefer that the chancellor make the determination of damages from the record. This will be accomplished on the remand.

> *Decree reversed as to that portion of the decree involving title to the bed of Philadelphia Avenue and costs and case remanded for f u r t h e r proceedings consistent with this opinion; appellees to pay the costs.*