## MT. SINAI NURSING HOME, INC., ET AL. v. PLEASANT MANOR CORPORATION, ET AL.

[No. 269, September Term, 1968.]

*Decided June 2, 1969.*

The cause was argued before HAMMOND, C. J., and BARNES, FINAN, SINGLEY and SMITH, JJ.

*Max E. Blumenthal* and *Leonard E. Cohen,* with whom were *Joseph Bernstein* and *Frank, Bernstein, Conaway & Goldman* on the brief, for appellants.

*Eugene P. Smith,* with whom were *M. William Adelson, Reuben Caplan* and *Frank B. Cahn, II* on the brief, for appellees.

HAMMOND, C. J., delivered the opinion of the Court.

Two nursing homes in Baltimore are locked in legal combat over a strip of land claimed by the appellants to be a public way established by long user and by the appellee Pleasant Manor to be its absolute property unencumbered by any easement, on which it has now built part of its nursing home. The protagonists cater to the old, the ill, the weak, and the infirm but their owners are strong, resolute, determined and dogged in their litigious struggles.

Mt. Sinai Nursing Home, Inc. and Alex Burkoff, lessee and owner respectively of 4613 Park Heights Avenue, sued Pleasant Manor Corporation, owner of adjacent property, 4615-17 Park Heights Avenue and a portion of the ground in the rear of 4619-4633 Park Heights Avenue, in order to obtain a declaration that they as complainants in an amended bill had an "easement or right-of-way" in or over Hentschel's Lane (ten feet wide which runs east from Park Heights Avenue between 4617 and 4619 Park Heights Avenue), a strip of land running from a twenty-foot alley, referred to as the "first alley" (which runs north and south along the rear of the houses numbered 4619 to 4633 Park Heights Avenue and is the westerly end of the strip in dispute) some one hundred feet to another twenty-foot alley (the "second alley") which runs north and south in back of houses on Pimlico Road parallel to the first alley. A twelve-foot alley runs east to Pimlico Road from the second alley. Complainants also sought an injunction requiring Pleasant Manor to stop building part of its proposed nursing home then in course of construction on the strip in dispute, to remove any obstructions and never thereafter in any way to obstruct or interfere with Mt. Sinai's easement of passage or right-of-way.

The amended bill alleged that the portion of Hentschel's Lane, ten feet wide, running from Park Heights Avenue to the first alley "exists by express grant in the chain of title," and the portion running from the first

alley to the second alley "exists, as shown below, by implied grant, dedication, and long and continuous use." It was alleged below that Mt. Sinai and Burkoff,

> "their tenants, invitees, and visitors, Baltimore City garbage collectors, and the public in general have used Hentschel's Lane as an easement or right of way between Park Heights Avenue and the second 20 foot alley for more than 20 consecutive years. Such use has been actual, open, notorious, adverse, exclusive, hostile, continuous, uninterrupted, and under a claim of right and has given the Plaintiffs an easement or right of way by prescription in said Hentschel's Lane up to said second 20 foot alley."

Two other supporting grounds for the claim of an easement were next alleged; the first "an implied grant or implied reservation thereof in their deeds and in the deeds of their predecessors in title," and the second "a dedication thereof to the public in general and to themselves and their predecessors in title in particular as neighboring property owners and residents." Pleasant Manor in its answer controverted all the pertinent and significant allegations of the amended complaint.

Judge Cullen heard an array of witnesses and considered various deeds, plats and documents, and held against the complainants on all three of their contentions. He found:

> "In the opinion of the Court, the testimony of the witnesses does not substantiate the Plaintiff's contention that the usage constituted a prescriptive right to an easement over the land on the grounds of adverse possession or implied grant in the chain of title, or by dedication to the public. The continuous use of the area by the various delivery men servicing the nursing home is not well taken by this Court. The testimony of the Defendant's witnesses of the impassable nature and pothole condition of the property

4

seems more plausible. The Court lends considerable weight to the disinterested testimony of Officer John H. Erdman, whose description and occasional surveillance of the area leads this Court to believe that an occasional truck or automobile may have crossed the area in order to get out to Park Heights Avenue or Pimlico Road, but the aspect of a continuous or uninterrupted use hardly seems possible. The Court also finds that the use to which the area was subject was temporary and permissive in nature, and as a result can never ripen into an easement by prescription.

"The Plaintiff's argument that an implied grant by deed to use the disputed portion of Hentschel's Lane as an additional exit to another street is without merit. In *Dalton v. Real Estate,* 201 Md. 34, it was held that when land is granted to various grantees, an easement can only be implied if it is reasonably necessary to the enjoyment of the land conveyed. In this case none of the grantees are landlocked, they all have access to an alley which will exit them on to a city street. Necessity has not been proven.

"Finally, the contention that the area of land in controversy was dedicated to the public again lacks essence. In order for land to be dedicated to the public, there must be an intention on the part of the grantor to offer the land in question to the public use and a manifest intention on the part of the municipality to accept the dedication thereof. Plaintiff's contention in this area is completely devoid of any evidence of corroboration. The Court is of the opinion that the case of *Chapman v. Rogan,* 222 Md. [12] is controlling."

In this Court the appellants have abandoned the three explicit grounds for relief alleged in their amended bill, grounds to which the testimony pro and con was directed

and with which the lower court dealt, conceding that they cannot meet their burden of showing that the trial judge was clearly wrong in his findings of fact or wrong in his statements of the law. They turn now to a theory of law which they say was at least inferentially or tangentially presented to the lower court but which the appellee says was neither raised nor decided below—that irrespective of intent express or implied, to offer to dedicate a way to the public, continuous adverse, hostile travel over private land by the public for more than twenty years brings into being a public easement. They argue that this theory of law is valid in the current context and urge us, if we agree, to remand the case for determination by the trial judge that the facts justify the application of their present view of the controlling law.

We shall assume that the point they now raise is properly before us for decision (the appellants printed in their reply brief portions of their trial memorandum of law which indicate that their present theory was presented to Judge Cullen, although not with the clarity and vigor of their other theories) but the triumph of the appellants must be short-lived since we conclude that they cannot prevail on that theory and therefore must lose entirely, having abandoned here their three theories relied on at trial.

The texts and the cases reveal that a right in the public to travel over a road or a way may arise by acceptance, evidenced by long continued user by the public, of an offer to dedicate a road to the public. There is another rule of law, which sometimes in an opinion seems to blend into, reflect or overlap the rule as to acceptance by user of an offer of dedication. The second rule, the one now relied on by the appellants, is that "irrespective of the question of intention, uninterrupted use by the public may give the public an irrevocable right. This result follows not because an intention to dedicate is conclusively presumed, but because by the lapse of the statutory period [twenty years] a perfect title by prescription [to an easement in gross] vests in the public." Frank,

Title to Real and Leasehold Estates (1912) p. 203. II American Law of Property § 9.50, pp. 483-486; 4 Tiffany, Real Property (Third Ed.) §§ 1211-1216. In *Thomas v. Ford,* 63 Md. 346, Chief Judge Alvey for the Court said at pp. 351-352:

> "It is certainly a settled doctrine in this State that public roads or ways of any kind can only be established by public authority, or by dedication, or by long user by the public, which, though not strictly prescription, yet bears so close an analogy to it that it is not inappropriate to apply to the right thus acquired the term prescriptive. Hence the existence of a public way may be established by evidence of an uninterrupted user by the public for twenty years; the presumption being that such long continued use and enjoyment by the public of such way had a legal rather than an illegal origin. *Day v. Allender,* 22 Md. 511."

See also *State, Use of James v. Kent County,* 83 Md. 377, 381; *Canton Co. v. Baltimore City,* 104 Md. 582, 584-585; *Easter v. Overlea Land Co.,* 129 Md. 627, 630; *Gray v. Shell Realty Corp.,* 219 Md. 531, 534; *cf. Delmarva Power Co. v. Eberhard,* 247 Md. 273, and cases cited.

The difficulty the appellants now face is that although the law they now cite would support their right to prevail, they lack the facts to do so. The record offers no support for a finding of the necessary continuous and uninterrupted use for twenty years of Hentschel's Lane from the first alley to the second alley. Mr. Burkoff came to the area first in 1942 and he and the witnesses he called testified only as to what had taken place in regard to Hentschel's Lane from 1942 to the time of trial. The testimony produced by the complainants as to travel and use of the Lane from 1942 on was completely denied and refuted by an impressive array of witnesses whose testimony was accepted as accurate by Judge Cullen, entirely permissibly as we see it. To avoid the findings ad-

verse to them as to what occurred from 1942 on, appellants now urge that they proved by the witness Whiteford White, who appears to have courted Mr. Hentschel's daughter for seven or eight years before they were married and made frequent visits to the Hentschel's home before and after the marriage beginning in 1922, that Hentschel's Lane between the first and second alleys was used for twenty years between 1922 and 1942 by the public for travel by foot and by horse and automobile from Park Heights Avenue to Pimlico Road. Mr. White's testimony perhaps would have been enough to sustain a finding by the trier of fact of the necessary public use except for the fact that it covered only a period of sixteen or seventeen years from 1922 on, Mr. White having lost all contact with the area after late 1938 or early 1939. There is not one word in the record as to the period from 1938 or 1939 to 1942. This hiatus makes it entirely speculative that prior to 1942 there was a continuous user by the public for more than sixteen or seventeen years and this failure of proof means that the appellants did not meet their burden of showing use by the public for the necessary twenty years between 1922 and 1942.

*Decree affirmed, with costs.*