539 A.2d 1138

**Willis M. KILER**

v.

**Mary Catherine BEAM.**

**No. 1022, Sept. Term, 1987.**

Court of Special Appeals of Maryland.

April 11, 1988.

Elwood E. Swam, Hampstead, for appellant.

Charles M. Preston (Stoner, Preston & Boswell, Chartered, on the brief), Westminster, for appellee.

Argued before MOYLAN, BISHOP and ROSALYN B. BELL, JJ.

ROSALYN B. BELL, Judge.

Ralph Kiler brought suit in the Circuit Court for Carroll County to enjoin Ralph and Mary Beam[1] from interfering with his use of a roadway over the Beams' property. That suit was brought in 1976 and the matter flared and simmered for years. In 1983 an Amended Bill of Complaint was filed which additionally asserted a right to the roadway by prescription. A hearing was held before a master, who found that Kiler had acquired a prescriptive use of the roadway. Exceptions were taken and argued, and the court overruled the Master's Report and Recommendation. The question on appeal is:

Did appellant establish a right-of-way by prescription over appellee's property?

This case involves two contiguous pieces of land situated in Carroll County. Appellant and appellee each own one of

---

1. Both Ralph Kiler and Ralph Beam died before the case came to trial. Willis Kiler continued the suit as successor in interest as appellant and Mary Beam continued as appellee.

the lots. Appellant's lot has been in his family since 1921.[2] Appellee's lot has been in her family since 1964. When looking south from the northern edge of appellee's lot, there is an existing dirt road across the western edge which continues south generally along the western border of appellant's lot. After crossing appellant's lot, the road follows a southerly direction and crosses a stream a substantial distance from appellant's lot. Successive members of appellant's family have used this roadway running across appellee's property once or twice a year since 1940 to get to their land.[3] In 1968, appellee's son placed a junk car across the roadway on appellee's land at the edge of appellant's property. In 1975, as a result of complaints by appellant, the car was moved. Several years later, another car was placed in approximately the same location where it remained until several days before the hearing. Appellee has never given permission to anyone to use the contested roadway.

In 1976, appellant brought suit to enjoin appellee from interfering with his use of the roadway. Appellant subsequently filed an Amended Bill of Complaint, claiming a prescriptive right to use the roadway.[4] Appellee denied the establishment of any prescriptive right. The master found that appellant's use of the roadway through the possession of successive predecessors had ripened into a right of way by prescription *prior* to appellee's acquisition of the property in 1964. Appellee filed exceptions to the Master's Report and Recommendation. The court found that appellant's use of the roadway was not sufficiently continuous for appellee to be aware that it was made under any claim of right.

---

2. Appellant's grandfather purchased the lot in 1921. The lot was subsequently given to appellant's parents and finally to appellant in 1984.

3. Neither party questions whether appellant can tack successive use by the Kiler family over appellee's land.

4. Appellant had access to his property from the south, negating any claim to both an easement by necessity and by implication.

Appellant appeals from that judgment entered in favor of appellee.

In the case *sub judice,* the court did not refute the master's finding that a prescriptive use was established *before* appellee purchased the property. Instead, the court focused on the use of the roadway *after* appellee acquired the land. We cannot tell whether the court agreed or disagreed with the master. Thus, we remand the case for a finding as to whether appellant had acquired an easement across the roadway *prior* to appellee's purchase of the land. If the court finds that appellant had, it must decide whether appellee's subsequent purchase of the servient estate extinguished the easement.

### —Prescriptive Easement—

 In Maryland, to establish an easement by prescription, it is necessary to prove an adverse, exclusive and uninterrupted use of the way for 20 years. *Furman E. Hendrix, Inc. v. Hanna,* 250 Md. 443, 445, 243 A.2d 600 (1968).

" 'By *adverse* is meant a *user,* without license or permission, for an adverse right of an easement cannot grow out of a mere permissive enjoyment, the real point of distinction being between a permissive or tolerated user, and one which is claimed as a matter of right. Where one, however, has used a right of way for twenty years unexplained, it is but fair to presume the user is under a claim of right, unless it appears to have been by permission....

" 'By *exclusive,* the law does not mean that the right of way must be used by one person only, because two or more persons may be entitled to the use of the same way, but simply that the right should not depend for its enjoyment upon a similar right in others, and that the party claiming it exercises it under some claim existing in his favor, independent of all others....

" 'Nor does the law mean by "an uninterrupted and continuous enjoyment," that a person shall use the way

every day for twenty years, but simply that he exercises the right more or less frequently, according to the nature of the use to which its enjoyment may be applied, and without objection on the part of the owner of the land, and under such circumstances as excludes the presumption of a voluntary abandonment on the part of the person claiming it.' "

*Zimmerman v. Summers*, 24 Md.App. 100, 106, 330 A.2d 722 (1975), quoting *Cox v. Forrest*, 60 Md. 74, 78–80 (1883) (citations omitted) (emphasis in original). It is essential that all of the elements of use and enjoyment concur in order to create such an easement. 28 C.J.S. *Easements* § 10. The burden of proof is on the claimant of the use to show that it has had the character and is of the duration required by the law. *Dalton v. Real Estate & Improvement Co. of Baltimore City*, 201 Md. 34, 41, 92 A.2d 585 (1952). On remand, the court must preliminarily decide whether appellant has met his burden of establishing the existence of a prescriptive easement by 1964 when appellee purchased the land.

Moreover, in *Bishields v. Campbell*, 200 Md. 622, 91 A.2d 922 (1952), the Court of Appeals stated:

"[W]hen an easement has been acquired by prescription, the character and extent of the use permissible are commensurate with and determined by the character and extent of the use during the prescriptive period. Accordingly, where the owner of land, over which another has acquired a right of way by prescription, erects a gate across the way, where there had been no gate for more than twenty years, equity might protect the owner of the easement in his use of the way entirely unobstructed by such gate. On the other hand, where a right of way has been acquired by prescription, but the owner of the land maintained a gate across the way during the entire prescriptive period, he may continue to maintain a gate across the way afterwards."

*Bishields*, 200 Md. at 625, 91 A.2d 922 (citations omitted). Thus, the type of usage may not be increased just because the use has ripened into a prescriptive right.

#### —Bona Fide Purchaser—

■■■ Maryland courts have not had occasion to decide whether a prescriptive easement is extinguished by the subsequent purchase of the servient estate by a purchaser without either actual or constructive notice.[5] Nonetheless, treatises and the overwhelming majority of case law in other jurisdictions agree that "an easement is not binding on a subsequent bona fide purchaser of the servient estate if he purchases without notice, either actual or constructive, of the easement." 3 Tiffany, *Real Property*, 397 (3d ed. 1939); 28 C.J.S. *Easements* § 47 (1941); *Wolek v. Di Feo*, 60 N.J.Super. 324, 159 A.2d 127, 130 (1960); *Otero v. Pacheco*, 94 N.M. 524, 612 P.2d 1335, 1337 (App.1980).

In *Fanti v. Welsh*, 152 W.Va. 233, 161 S.E.2d 501 (1968), appellees sought a judgment declaring that they had a prescriptive right to maintain a sewer under appellants' land. The issue was whether an easement established *before* appellants bought the land was extinguished by their purchase of the property. In holding that it was, the Court said:

"Hence, it is a well-established principle governing the purchase of servient tenements that an easement therein is extinguished unless the purchaser has either actual notice of the existence of the easement, or constructive

---

**5.** In *Slear v. Jankiewicz*, 189 Md. 18, 25, 54 A.2d 137 (1947), *cert. denied*, 333 U.S. 827, 68 S.Ct. 453, 92 L.Ed.2d 1112 (1948), the Court held that an easement by implication is not automatically extinguished by the subsequent purchase of the servient estate. Similarly, in *Libertini v. Schroeder*, 149 Md. 484, 132 A. 64 (1926), a case involving an oral grant of an easement, the Court held that, "without actual or constructive knowledge, the [subsequent owner] as a bona fide purchaser for value was not bound by any estoppel of his grantor." *Libertini*, 149 Md. at 492, 132 A. 64.

*See also Rogers v. Burnopp*, 263 Md. 357, 283 A.2d 367 (1971), in which the boundaries of a conveyed but misdescribed right of way had been visible for more than 20 years and had not been challenged, tacking was permitted. There was contradictory evidence whether the use was known or should have been known to the purchaser of the servient tenement, but this was not the basis of the decision. Similarly, in *Zehner v. Fink*, 19 Md.App. 338, 311 A.2d 477 (1973), no issue of the absence of notice was raised.

notice from the recordation of the express grant or reservation creating it, or from the fact that its use and enjoyment is open and visible."

*Fanti*, 161 S.E.2d at 505; *see also, Tiller v. Hinton*, 19 Ohio St.3d 66, 482 N.E.2d 946, 949 (1985). The Court went on to say:

"The grantee is bound where a reasonably careful inspection of the premises would disclose the existence of the easement, or where the grantee has knowledge of facts sufficient to put a prudent buyer on inquiry. It is not necessary that the easement be in constant and uninterrupted use. The purchaser of property may assume that no easements are attached to the property purchased which are not of record except those which are open and visible."

*Fanti*, 161 S.E.2d at 505.

Similarly, in *Renner v. Johnson*, 2 Ohio St.2d 195, 207 N.E.2d 751 (1965), the owners of a dominant parcel sought to enjoin the termination of their water and sewer lines by the owners of the servient parcel. The Court concluded that an equitable easement is not enforceable against a bona fide purchaser for value who has no actual or constructive notice of the easement. *Renner*, 207 N.E.2d at 753. Additionally, the Court stated that there are sound reasons

"to protect a bona fide purchaser against a [prescriptive] easement of which he has no actual or constructive notice. The owner of the dominant parcel could request a deed for the easement from the owner of the servient parcel. If given, he could record it. If refused, he could bring an action in equity to establish his legal right to the easement. In either event, a bona fide purchaser would then take subject to the easement because he would have constructive notice thereof either from the record or the action."

*Renner*, 207 N.E.2d at 754.

We concur that these tools were available to the owner of the dominant estate if he wished to secure his interest in

the prescriptive easement, but he was not required to avail himself of these legal tools.

In the case *sub judice*, the master found that there was an existing physical roadway. This fact was not adopted by the court, however. Appellee's deed did not mention the existence of an easement across the property. The court made no finding upon which we could hold whether appellee and/or her husband had actual or constructive knowledge of appellant's use of the roadway.

In *Fertitta v. Bay Shore Development Corp.*, 266 Md. 59, 291 A.2d 662 (1972), the Court said:

"In determining whether a purchaser had notice of any prior equities or unrecorded interests, so as to preclude him from being entitled to protection as a bona fide purchaser, the rule is that if he had knowledge of circumstances which ought to have put a person of ordinary prudence on inquiry, he will be presumed to have made such inquiry and will be charged with notice of all facts which such an investigation would in all probability have disclosed if it had been properly pursued. A purchaser cannot fail to investigate when the propriety of the investigation is naturally suggested by circumstances known to him. If he neglects to make such inquiry, he will be guilty of bad faith and must suffer from his neglect. That which is sufficient to excite inquiry is notice of such facts as would lead an ordinarily prudent man to make an examination."

*Fertitta*, 266 Md. at 72–73, 291 A.2d 662.

With those principles in mind, the court, on remand, must decide whether appellee is charged with actual or constructive notice of an easement across her property.

JUDGMENT VACATED; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; COSTS TO BE DIVIDED EQUALLY BETWEEN APPELLANT AND APPELLEE.