767 A.2d 891

**WASHINGTON LAND COMPANY,**

v.

**POTOMAC RIDGE DEVELOPMENT CORPORATION et al.**

**No. 2850, Sept. Term, 1999.**

Court of Special Appeals of Maryland.

March 1, 2001.

William C. Wantz, Hagerstown, for appellant.

John H. Urner (Mark K. Boyer, Urner, Nairn & Boyer, LLC, and Roger Schlossberg, on the brief), Hagerstown, for appellees.

Argued before THIEME,* KENNEY, and JAMES S. GETTY (Ret'd, Specially Assigned), JJ.

THIEME, Judge.

Appellant Washington Land Company brought this action in the Circuit Court for Washington County, seeking an injunction to prevent appellee Potomac Ridge Development Corporation from using for its condominium project certain water and sewer utility lines. Appellant installed these lines in 1974 in an easement purchased from the Lorich Corporation over land owned by that company. The court below ordered the City of Hagerstown, also an appellee here, and Lorich to be joined as additional parties.[1] Appellant cross-claimed against the City and elected a trial by jury. Appellees challenged the right to trial by jury, and after the court denied their motion, the trial began. At the conclusion of appellant's case, both appellees moved for judgment, and the court granted those motions. Appellant noted a timely appeal, and the City and Potomac Ridge noted cross-appeals. Appellant asks:

1. Did the court below err when it found for appellees based on implicit dedication?

2. Did the court below err when it found for appellees based on prescription?

---

* Thieme, J., participated in the hearing and conference of this case while an active member of this Court; he participated in the adoption of this opinion as a retired, specially assigned member of this Court.

1. Lorich is not a party to this appeal.

To these questions, we answer "yes," and we remand to the Circuit Court for reconsideration of these issues by a jury. On cross-appeal, appellees ask:

1. Did the court below err when it denied appellees' motion that appellant was not entitled to trial by jury?

2. Did the court below err when it denied appellees' motion for judgment based on laches?

3. Did the court below err when it denied appellees' motion for judgment based on limitations?

4. Did the court below err when it denied appellees' motion for judgment based on equitable estoppel?

We decline to reach these other questions, because our remand on appellant's questions disposes of this case entirely.

### Facts

In 1970, appellant Washington Land Company bought the Martz farm, located east of Hagerstown in Washington County, intending to develop the land for apartments and single-family homes. To connect the nearby municipal water and sewer utility services operated by the City of Hagerstown, appellant purchased in 1972 from the Lorich Corporation an easement of approximately two thousand linear feet connecting the Martz farm with U.S. Route 40, a divided highway.

After it obtained the easement, appellant applied to the City of Hagerstown to secure the necessary utility connections. In the negotiations that followed, the City asked that appellant dedicate the lines to the City for no consideration, and that appellant pay development connection fees, i.e., "tap fees," for using those lines. We note that appellant paid for construction of the lines.

In turn, appellant asked the City for consideration. To allow the City to control the lines, appellant requested a credit against future tap fees in an amount equal to their construction costs, $149,450.

While the lines were under construction, the City Attorney met with appellant and pressed the City's request for dedica-

tion. Appellant and the City never reached any agreement, but following the meeting, water and sewer connections were made. Appellant neither received nor executed any deed, plat, or other instrument of dedication.

In the years that followed, appellant paid the tap fees to the City and continued to develop the lands that comprise the apartment community and residential subdivisions known as "Londontowne" and "Fairway Meadows." These developments received City water and sewer services via the easement.

In 1995, appellant learned that appellee Potomac Ridge had submitted plans to the Washington County Planning Department for the development of a parcel next to Londontowne. Drawings submitted to the County showed that Potomac Ridge intended to connect its utility lines to the lines in Londontowne, which were, in turn, served by the water and sewer lines installed by appellant in the easement.

To protect the remaining development capacity of its water and sewer lines, appellant advised Potomac Ridge of its position on their use. It also wrote the City's water and sewer departments, informing them of its objections to appellee's use of the lines. It received no responses to its letters. Meanwhile, Potomac Ridge continued its condominium development, and after paying to the City connection fees of $149,165, established utility connections to the City water and sewer services by installing pipes under Landis Road and tapping into the lines in Londontowne.

While construction at Potomac Ridge was underway, appellant filed the action *sub judice* to enjoin this connection from being made. Potomac Ridge, in turn, petitioned the court to require Lorich and the City to be joined as additional parties, and, when the court so ordered, appellant filed a cross-claim against the City seeking disgorgement of tap fees collected from Potomac Ridge. Appellant elected a jury trial.

At trial, appellant asserted that the City had never acquired title to the Lorich lines nor had it acquired an easement over the same, by dedication, condemnation, or otherwise. The

City thus lacked authority, it argued, to permit Potomac Ridge to use the lines. The City argued that it implicitly owned the lines and enjoyed an easement because those lines were connected to its water and sewer systems, whether any formal dedication or transfer of rights had ever taken place. At the conclusion of appellant's case, Potomac Ridge and the City moved for judgment under Maryland Rule 2–519(b). The court below granted judgment and Washington Land noted this appeal.

## Discussion

When a motion for judgment comes at the conclusion of plaintiff's case in a jury trial, Maryland Rule 2–519(b) governs its disposition:

When a defendant moves for judgment at the close of the evidence offered by the plaintiff in an action tried by the court, the court may proceed, as the trier of fact, to determine the facts and to render judgment against the plaintiff or may decline to render judgment until the close of all the evidence. When a motion for judgment is made under any other circumstances, the court shall consider all evidence and inferences in the light most favorable to the party against whom the motion is made.

In *Thodos v. Bland,* 75 Md.App. 700, 542 A.2d 1307 (1988), we delineated the judge's role in deciding such a motion from that of the jury:

Although the trial judge, in ruling on a motion for judgment, must assess the sufficiency of the evidence to generate a jury question, once he or she has done so, it is up to the jury to determine the ultimate question, whether the burden of proof has been met.

In making its determination, the jury assesses and evaluates the weight to be assigned to the evidence presented to it and decides its effect. Neither the trial court nor this Court is permitted to substitute its evaluation of that evidence for that of the jury. To do so would be an invasion of the jury's province.

*Id.* at 713–14, 542 A.2d 1307 (citations omitted). On review, we do essentially what the trial court should have done, by seeking to determine whether the evidence was sufficient to have created a jury question. *See, e.g., Garrison v. Shoppers Food Warehouse,* 82 Md.App. 351, 353–57, 571 A.2d 878 (1990); *James v. General Motors Corp.,* 74 Md.App. 479, 484–85, 538 A.2d 782 (1988); *Pahanish v. Western Trails, Inc.,* 69 Md. App. 342, 353, 517 A.2d 1122 (1986).

Appellant contends that its evidence was sufficient to raise a jury question as to whether the lines had been had been dedicated to the City and as to whether an easement had been created. For this reason, it claims, the court erred in granting judgment for appellees at the end of appellant's case. We agree and hold that the evidence, considered in the light most favorable to appellant, was sufficient to justify sending both issues to the jury, and we thereby remand.

## I

█ The court below found that a common law dedication for the water and sewer lines in question took place in 1974 and 1975. Appellant argues, and we agree, that common law dedication may not have taken place.[2] Appellant presented credible evidence that the City did not accept the terms of appellant's formal offer, and the jury should have been given an opportunity to weigh that evidence.

## A

█ When it determines whether a landowner has dedicated his land at common law to public use, the court must perform a fact-intensive analysis. It must consider "declarations of the landowner, his intentions as manifested by his acts, and all the other circumstances of the case." *Smith v. Shiebeck,* 180 Md. 412, 420, 24 A.2d 795 (1942). A completed common law dedication requires an offer and an acceptance, *Town of Glenarden v. Lewis,* 261 Md. 1, 2, 273 A.2d 140 (1971),

---

2. Appellees did not allege statutory dedication.

but whether dedication actually occurred turns upon a finding of intent by the owner to give his lands over to public use. *Blank v. Park Lane Ctr., Inc.*, 209 Md. 568, 574, 121 A.2d 846 (1956) ("Implied dedication is made up of acts and conduct of the owners of land with respect to a way which estop him from denying that his intention was to dedicate the way to the public. The intention of the owner is the governing test."). Expression of that intent must be clear and unequivocal. *See, e.g., Department of Natural Res. v. Mayor & Council of Ocean City*, 274 Md. 1, 8, 332 A.2d 630 (1975) ("[The chancellor] concluded that dedication could not be implied, because there was no proof of a clear and unequivocal manifestation of an intent to dedicate. We think this conclusion was compelled by *Toney Schloss v. Berenholtz*, 243 Md. 195, 204–05, 220 A.2d 910, 914 (1966); *Canton Co. v. Baltimore*, 106 Md. 69, 83–84, 66 A. 679, 680 (1907); and *Harbor Co. v. Smith*, 85 Md. 537, 541–42, (*South Baltimore Harbor & Improvement Co. v. Smith,*) 37 A. 27, 28 (1897)."). Indeed, an owner may not be deprived of his interest by dedication unless there has been some clear and decisive act indicating a desire to dedicate land to public use. *North Beach v. North Chesapeake Beach Land & Improvement Co.*, 172 Md. 101, 115, 191 A. 71 (1937). Likewise, the public must also show its intent to accept clearly and decisively. *Id.* at 116, 191 A. 71.

One of the partners of appellant, Daniel H. Sheedy, testified at trial that appellant had not intended to dedicate the easement or utility lines to the City unless it received valuable consideration—its construction costs, in the form of tap fee credits spread over the build-out period for appellant's development—and that the City never agreed to this condition. The court, nevertheless, noting that an offer "doesn't have to be explicit," found in appellant's own case evidence supporting clear intent to make an unequivocal offer of dedication. The court relied upon the instruments executed by appellant and Lorich and other correspondence related to the easement and lines.

In reaching its ruling that an unequivocal offer had been made and accepted, the court reviewed the easement instru-

ments and the factual circumstances surrounding their execution. The first easement instrument was prepared, executed and recorded in 1972, after Sheedy and the Lorich Corporation, in contemplation of subdividing their adjoining parcels, agreed to connect City utility lines that served Lorich lands with those of appellant. This agreement called for an easement across the Lorich tract to be granted in favor of appellant's tract. The instrument, executed May 23, 1972, states:

> And [Washington Land] does covenant and agree to convey, without money consideration, said parcel, easements and/or rights of way to the County Commissioners of Washington County, and appropriate utility companies for the purposes aforesaid.

Because the water and sewer services available to these properties at that time and since were those of the City of Hagerstown, the court construed references to "appropriate utility companies" to include City-run utility services.

The court next turned to the confirmatory instrument, executed November 8, 1974, to reinforce its finding of intent in the first instrument. This instrument, we note, was prepared and procured by appellant within days of a meeting on October 28, 1974, attended by Sheedy, representing appellant; Robert Kuczynski, Esq., attorney for the City of Hagerstown; Gerald Cump, P.E., a consulting engineer doing work for appellant, and several others.[3] Meeting attendees discussed the relocation of sewer and water lines planned for the Lorich property and intended to serve Londontowne. They also spoke about appellant's plans to access an existing sewer pumping station near Londontowne that was and is owned by the City. The confirmatory instrument documents the relocation (at the behest of the City) of the water and sewer lines contemplated by the original easement instrument,[4] but it does

---

**3.** A letter from Sheedy to Kuczynski dated October 29, 1974, documents this meeting.

**4.** The letter of October 29 memorializing the meeting between appellant and the City states:

not add to or subtract from that easement. The instrument specifically identifies the original easement throughout as a "utilities right-of-way."

The third leg supporting the court's analysis was a letter from Cump to Kuczynski dated July 29, 1975, after the lines had been completed and placed into service. With this letter, Cump transferred to the City several documents, including "as built" construction drawings already on file with the City's Engineering Department pertaining to the conveyance of utility easements for Londontowne Subdivision Section 4. The letter clearly identifies one of three easements, Easement A, as "a 20 foot utility easement from the Northwestern property line of Londontowne—Section A through the lands of Lorich Co., Inc. (Dr. Richard Harrison, principal owner) to the Northeastern right-of-way line of U.S. Route 40." [5] Cump also provided in the letter legal descriptions of the easements and language to have been used in an agreement for conveyancing the same to the City. The letter does not, however, express any conditions requiring payment of consideration to appellant and none requiring the appellant's consent as to who could use or be connected to these water and sewer lines. Pointing out that Cump was, in fact, appellant's agent, acting with apparent authority, and citing *Smith*, 180 Md. at 412, 24 A.2d 795, the

---

The purpose of the meeting was to discuss the relocation of the sewer and water lines through Dr. Richard Harrison's farm. [Dr. Harrison was the principal owner of the Lorich Corporation.] Specifically relocation of Line "B" (original approved line) to Line "A" location as shown on a Plan and Profile drawing prepared by Oliver Cump & Associates, Inc., dated October 28, 1974.

Mr. Breichner [superintendent of the City's Water Department in 1972] stated that either Line "A" or Line "B" route was satisfactory with his department; and that the developer/contractor could proceed on that basis. . . .

In conclusion, it was resolved that Mr. Cump and Mr. McGauhey [superintendent of the City's Water Pollution Control Department in 1972] would work together to come up with an [*sic* ] mutually acceptable decision on the technical aspects of Line "A" versus Line "B" relocation; and a program (study/report) for future sewering of the complete area. . . .

**5.** Easement C terminates where the lines serving appellee Potomac Ridge's land connect to the City's water and sewer lines.

court below found that the letter represented appellant's unequivocal intent to make an offer.[6]

The court likewise found acceptance of appellant's offer by the City, turning to *Windsor v. Mayor of Ocean City,* 71 Md.App. 476, 526 A.2d 102 (1987), for its reasoning. *Windsor* lays out four methods by which an offer may be accepted: by acceptance of a deed or other record; by acts *in pais,* such as opening, grading, etc., at the public expense; by long public use; or by express statutory or similar official action. *Id.* at 486–87, 526 A.2d 102. The court found two of the four methods to be applicable here. First, the court found long term public use of the lines, commencing in 1974 or 1975, in the sense of "all the citizens that were turning on tap water and flushing toilets." For at least 23 years, water coursed through these lines from the City's water supply to the consuming public, who then discharged used water and other matter into the sewer lines that flowed to the City's waste water treatment plant. The public paid for the water it purchased; the sewage it sent for treatment; and the maintenance of the two systems, including the lines running through the easement on Lorich lands. Long use by the public at large, the court reasoned, may be a form of acceptance of an offer of dedication. *See Annapolis v. Waterman,* 357 Md. 484, 506, 745 A.2d 1000 (2000). Regarding acts *in pais,* moreover, the court noted, "There's no doubt, and there's no contradiction that the only party that serviced these water and sewer lines for the 23 years before suit was filed, was the City of Hagerstown." Although the City receives fees for these services, the court acknowledged, public funds have paid for

---

6. We note as well that the letter of October 29 memorializing the meeting between appellant and City officials might also be read to confirm appellant's intent to dedicate the sewer and water lines in question. The letter states:

> Also, I am to work with your office on the preparation of an agreement to be signed by Dr. Harrison, the City, and myself on the transferring of the sewer and water right-of-way over to the City for their operation and maintenance.

the maintenance of these lines, thus meeting the fourth criteria.

## B

The court's reasoning, however, does not carry the day. The court seemed to ignore—or perhaps it improperly weighed—considerable testimonial evidence that the requisite intent for offer and acceptance was not present, and it possibly misinterpreted the very documents upon which it relied. In doing so, it strode firmly into the jury's province.

## 1

Appellant contends that acceptance under contract law governs the law of dedication, and thus the City's acceptance must meet and correspond with the terms of the offer in every respect, as though dedication were a garden variety contract. *Canaras v. Lift Truck Services, Inc.*, 272 Md. 337, 346, 322 A.2d 866 (1974) (citing *Buffalo Pressed Steel Co. v. Kirwan*, 138 Md. 60, 113 A. 628 (1921)); *Peoples Drug Stores, Inc. v. Fenton Realty Corp.*, 191 Md. 489, 494, 62 A.2d 273 (1948) (same).[7] The City did not accept a key condition of appellant's offer—to credit its construction costs against future tap fees—so acceptance of the precise offer appellant intended to make, even if implicit,[8] did not take place, appellant argues.

---

**7.** Appellant borrows a contract rule here rather than cite a settled rule of real estate law. Appellees counter that appellant cannot apply a contract rule because it cannot cite a Maryland case that places dedication within the ambit of contract law. Indeed, we cannot find such a case either. We believe, nevertheless, that appellant's application of contract law is reasonable. First, we think it would be *un* reasonable for commonly used terms of art like "offer" or "acceptance" to change meaning according to the context in which they are used. Second, we note that the distinction between a dedication and a prescription turns upon offer and acceptance, which highlights for us the similarity between a dedication and a contract of conveyance. Dedication is impossible without offer and acceptance, yet long use will nevertheless establish a prescriptive easement. *See Mayor & Council of Ocean City*, 274 Md. at 8, 332 A.2d 630.

**8.** Not all forms of acceptance set forth in *Windsor* are explicit, *e.g.*, long public use. Here, to accept appellant's precise offer implicitly, the City

At deposition and during several points in the hearing, appellant offered considerable testimony at trial supporting its theory. We reproduce herein several examples of testimony regarding appellant's express condition and the parties' failure to reach a meeting of the minds on that condition. At deposition, for example, Sheedy testified about how negotiations with the City over the easement arose:

Q: Alright, when you began the development, you realized you would have a need for water and sewer services, correct? ... How did you go about trying to obtain that?

A: I went through the regular channels of preparing drawings, submitting the drawings to the County Planning Department, and then I would submit drawings to the City Water Department and the City Sewer Department, as well as to the State Health Department....

Q: Okay, so it is your understanding at this point, certainly at the time of this letter, the City was demanding unrestricted utility easements be deeded to them? ...

A: They wanted to have me turn over the easement which I had to them.... I had already acquired the easement and had it for a couple of years before that was generated. I was unwilling to, you know, turn it over to them for nothing.

Q: But at this point, your understanding of what they wanted was prior to hooking up you were going to have to give them that easement, correct?

A: They wanted that all along, I was unwilling to give it to them.

\* \* \*

Q: Well during the negotiations prior to the time the lines were completed, it was your understanding that the City was going to require easements so that they....

A: They wanted easements, I didn't want to give them to them because I wanted an offset for the cost.

---

might have continued to use the lines while voluntarily crediting appellant for future tap fees.

Sheedy also testified regarding the discussions with the City that took place around the time construction began:

I was interested either in having the City offset tap fees against my construction costs, or, if they were able to, early on I had discussed with them possibilities of getting a grant or them constructing the interceptor lines.

As for the outcome of those discussions, Sheedy averred:

I was unsuccessful in getting them to, uh, get a grant to construct the lines. I'd been unsuccessful in getting them to build the line for our use, so what I wanted to do, the only thing that I had left was to, uh, have an offset of a portion of the tap fees that we'd be paying in the future and offset against our construction costs, which was less than what the tap fees that I paid to the City in addition to the cost of the line.

\*　　\*　　\*

Q: And, what happened after you wrote this letter [summarizing the October 28 meeting] with regard to the preparation by the City attorney, of that agreement [to dedicate the easement]?

A: We were never able to work out our differences and there was no agreement prepared.

\*　　\*　　\*

Q: Now the City representatives at that meeting, none of them agreed to pay you any tap fees or any other consideration for this line, is that correct?

A: That's correct.

Q: The City's position was, I take it, that you had to give them the easement?

A: That's correct.

Q: And the City never changed that position, did they?

A: Not to my knowledge.

Q: So, whether you had one discussion with them, or more, their position remained that you had to give them the easement and the line, is that correct?

A: They wanted us to give them the easement, and I would not.

* * *

Q: Okay. Now, on the second page of that letter [of October 29], you have a reference there with respect to your working on an easement document.

A: Yes.

Q: Now is it your testimony that you did no further work on an easement document?

A: There were discussions on it, there was no reaching ...

Q: Is, is it your testimony, sir, that you did no further work on an easement document after this date?

A: Easement document? No work on a document, that's correct.

Q: Okay, so, notwithstanding what you said to the City in the letter, you didn't do anymore [sic ] work on an easement document? ...

A: I did work on it, I did discuss it with [Kuczynski]. There was no document produced because we did not have a meeting of the minds on it.

Finally, Sheedy explained when he was deposed why no formal agreement had ever been executed:

Q: You don't look at that [language in the agreement between appellant and Lorich] as part of the agreement with Lorich to make a dedication of grant easements to the City?

A: The purpose is that, with the appropriate agreements and understandings with the City we would have granted the easement to them, but the negotiation was that we were to have an offset of our tap fees against the cost of the constructing of the main sewer interceptor line....

The foregoing examples are but part of the considerable body of testimony from Sheedy regarding the failure of the parties to reach a meeting of the minds on the terms of a dedication— and the City's unwillingness to accept the offer that appellant intended to make. Considered in the light most favorable to

appellant, such testimony is sufficient to create a jury issue regarding whether the City accepted the appellant's actual offer.

■ In turn, Sheedy's testimony also calls into question whether appellant had the requisite unequivocal intent to dedicate the easement without compensation. Although offer and acceptance may be implied from conduct, *i.e.,* "no form or ceremony is necessary to dedicate land to public use," *Smith,* 180 Md. at 419, 24 A.2d 795, intent cannot be implied. *See Mayor & Council of Ocean City,* 274 Md. at 8, 332 A.2d 630. That the court heard Sheedy's above testimony and found for appellees anyway suggests that it sought to substitute its own credibility assessment for that of the jury. By doing so, it invaded the jury's province, *Thodos,* 75 Md.App. at 714, 542 A.2d 1307, and its rationale supporting judgment for appellees cannot stand.

Were a jury to believe Sheedy's rendition of events, moreover, we believe that it might not have construed appellant's offer to dedicate land to the City for compensation—and appellant's refusal to give that land *without* compensation—as a dedication. Although the easement over the Lorich parcel has long been subject to public use, the pre-condition of offer and acceptance was incomplete, and appellant's donative intent was misconstrued, without acceptance of appellant's precise conditions. *See generally* 11A McQuillan, *Municipal Corporations* § 33.35 (3d ed. rev.2000) (evidence of intent to dedicate, and conditions attached to dedication, shown by a variety of actions).

■ There exists no Maryland case precisely on point to support our holding today, but appellant calls our attention to an Illinois case, *Sundstrom v. Village of Oak Park,* 374 Ill. 632, 30 N.E.2d 58 (1940), which addresses this precise issue. In *Sundstrom,* an Illinois municipality claimed rights by common law dedication in certain water and sewer lines and in a concrete sidewalk. The owner had sought compensation for the use of his land. Finding that the owner imposed restrictions that the municipality had been unwilling to respect, the

Illinois Supreme Court resolved the dispute in the landowner's favor, stating:

> The vital, controlling element in a common-law dedication is the *animus dodandi* (an intention to donate). . . . The language of the contract expressed on the plat shows there was no intention to donate the land to the public use. On the contrary, it shows an attempt to trade the land for the permanent exclusive use of a part of the street. It, therefore, was not a common law dedication.
>
> An owner, making a voluntary dedication of his property to public use, may annex such conditions and limitations to his grant as are not inconsistent with the dedication and will not defeat the operation of the grant.

*Id.* at 62; *see also Maryland–National Capital Park & Planning Comm'n v. McCaw*, 246 Md. 662, 681, 229 A.2d 584 (1967) (Barnes, J., dissenting) ("The dedicator may impose conditions and restrictions in his offer to dedicate, and when the offer is accepted by the donee, the dedication is limited by those conditions and restrictions. . . . The public authorities . . . must . . . accept the presumed offer of dedication before the dedication is complete." ) (citations omitted) (citing *Armiger v. Lewin*, 216 Md. 470, 477, 141 A.2d 151 (1958)). The rule of *Sundstrom*, in our view, governs here.[9]

### 2

After possibly ignoring a considerable body of testimony, or perhaps treading on the jury's province by weighing that

---

9. Indeed, it is the rule of *Sundstrom* that distinguishes the case at hand from *Harlan v. Bel Air*, 178 Md. 260, 13 A.2d 370 (1940), cited approvingly by appellees. In *Harlan*, the Court of Appeals held that dedication was presumed for a street abutted by several private lots because the grant for the lots was silent regarding the absence of such dedication or the presence of pre-conditions. *Id.* at 265, 13 A.2d 370. The Court found acceptance of the grantor's offer to dedicate because the town had taken over from the abutting landowners maintenance of the street some three years before the suit, and the street had a long history of public use. *See also Condry v. Laurie*, 184 Md. 317, 320, 41 A.2d 66 (1945) (holding that unless subdividing grantor uses language to show he did not intend dedication, dedication is presumed).

evidence, the court may well have perpetuated its error in the reading of the easement instruments. Appellant asserts—reasonably, we think—that the provision in the original instrument relating to dedication quoted *supra* actually refers to a different easement. That easement for electric, telephone and cable television service lines was established along Day Road in connection with an adjoining parcel. Appellant claims that the instrument reflects its plans at the time to acquire the adjoining parcel—located 1,300 feet from the water and sewer easement in controversy—from Lorich so that it could rebuild and align the intersection at Day and Landis Roads.

Appellant's explanation of the instrument makes sense. The parcel was not within the City of Hagerstown, nor was it near any City utility services, facts that sharply focus the promise articulated in the instrument "to convey, without money consideration, said parcel, easements and/or rights of way to the County Commissioners of Washington County." [10] The instrument does, moreover, describe the adjoining parcel in the paragraph immediately preceding the language upon which the court relied:

And in further consideration of the premises and the mutual covenants herein contained, and the payment by [appellant] to [Lorich] of the sum of One Thousand Dollars ($1,000.00), in hand paid, the receipt of which is hereby acknowledged, [Lorich] does covenant and agree to, by appropriate instrument of conveyance, to be prepared and recorded at the expense of [appellant] a small area of land free and clear of encumbrance of approximately 1/3rd to ½ acre necessary for straightening out the corner and realigning Landis Road at its intersection with Day Road, and any slope easement necessary in connection with said realignment, together with any easements and rights of way necessary, but subject to the approval of [Lorich], which approval will not be unreasonably withheld, for utilities and/or widen-

---

**10.** In fact, the easement instrument makes no explicit mention of the City of Hagerstown.

ing and improvement of Day and Landis Roads from the property of [appellant] to U.S. Route 40.

The instrument further states that Lorich "grant[s] unto [appellant] the right to install . . . . electric, telephone, cable TV, and similar utilities . . . at or near the intersection of Day Road and U.S. Route 40 and/or in and along Day Road." Additionally, its recitals declare that "it will be mutually beneficial to the parties hereto to cooperate . . . in the dedication of necessary land for road widening."

Moreover, Sheedy testified to this arrangement during the trial:

Q: And the next paragraph that follows.

A: "And the party of the first part does covenant and agree to convey without money consideration said parcel, easements and/or rights-of-way to the County Commissioners of Washington County and appropriate utility companies, for the purposes aforesaid."

Q: Now, explain to the jury, uh, what this third to half acre parcel was all about, and step down here, if you like, to the, uh, drawing, with the court's permission, and point out the location of this parcel.

THE COURT: Yes.

[APPELLEE'S COUNSEL]: Your Honor, if we may get up, also, so we can see what's being pointed to?

THE COURT: Certainly.

A: This third to half acre . . .

[APPELLEE'S COUNSEL]: May we have a second.

A: . . . there use [sic] to be . . .

[APPELLEE'S COUNSEL]: Dan, Mr. Sheedy, just a second so we can get over here and see what you're pointing to.

THE COURT: Alright, go ahead sir.

A: Day Road was the main thoroughfare, here, and this intersection use [sic] to come down here like this and come around like this, into the, it use [sic] to "T" off, and the objective was to acquire this parcel of land right in here, this third to half acre, so that the traffic could flow down

Day and into Landis Road and then a stop sign being erected here on Day Road so the traffic coming out Day Road would, in fact, in the future stop and the main traffic flow would be like this. That's the third to half acre parcel right here.

Once again, the court below failed to consider the foregoing testimony in the light most favorable to appellant, the non-movant. Rather than make a finding as to the sufficiency of evidence, it stepped into the shoes of the jury to make a credibility assessment regarding the considerable evidence appellant put forward. By doing so, the court erred.

### 3

The court likewise compounded its error by misinterpreting the Cump letter. Although the letter may be reasonably construed as an expression of strong intent, it is hardly the smoking gun that appellees suggest it might be. First, the statement upon which appellees rely—"[w]hen you prepare the agreement for conveyance of Easements A, B & C we would like basically the following note included with Easements A and B ..."—is conditional. It does not necessarily imply that any agreement was ever reached or any instrument was executed.

Second, considering the letter in the light most favorable to appellants, that statement might be interpreted quite differently from the trial judge's reading of it, or even from appellant's current contention that the statement means nothing at all. From the evidence on record, for example, a jury might have reasonably inferred that an offer to dedicate was *already* on the table (though never accepted to appellant's satisfaction), even in the absence of the testimony appellant identifies as missing, *e.g.*, testimony that Cump was appellant's agent and had apparent authority to negotiate dedication of land. Whether or not Cump could bind appellant, representatives having undisputed authority to bind both parties *had* discussed dedication during the months before the letter was written. Arguably, Cump's letter was simply a ministerial act intended to convey information of mutual interest to appellant

and the City. We need not speculate further as to the role the letter played. Instead, we simply note again that the court below improperly took interpretation of that letter out of the hands of the jury.

4

 Finally, the court also erred when it found acceptance by public use. Public use of the easement must be conferred upon and exercisable by the public *at large,* and not merely a portion of it, such as the property owners living within a particular subdivision. *See Waterman,* 357 Md. at 506, 745 A.2d 1000 (distinguishing "dedication" and "reservation") (citing *River Birch Assoc. v. City of Raleigh,* 326 N.C. 100, 388 S.E.2d 538, 542 (1990)); *Chapman v. Rogan,* 222 Md. 12, 19, 158 A.2d 626 (1960) (holding that limited use of dead-end alley by residents of abutting property and their licensees is not public use); *Atlantic Const. Corp. v. Shadburn,* 216 Md. 44, 52, 139 A.2d 339 (1958) ("There can be no dedication between the owner of land and individuals. . . ."); *Brady v. Farley,* 193 Md. 255, 259, 66 A.2d 474 (1949) (" 'There is no such thing as a dedication between the owner and individuals, the public must be a party to every dedication. It is the essence of a dedication to public uses, that it shall be for the use of the public at large.' ") (quoting *Mayor & City Council of Baltimore v. Gordon,* 133 Md. 150, 153, 104 A. 536 (1918)). Here, utility service extended by the disputed water and sewer lines has been confined to the subdivisions developed on land owned or sold by appellant [11] and to the servient parcel.[12] No evidence in the record shows a more general public use or availability of the lines beyond the dominant and servient parcels.

\* \* \*

---

11. Appellant sold several lots in Londontowne to Heritage Builders, Inc., for the development of townhomes. Appellant had neither ownership nor management interests in Heritage.

12. A farmhouse and an office building located on the Lorich property share in the use of the easement and utility lines through rights reserved by the agreement between appellant and Lorich.

Thus, we cannot agree with the court below when it construed the evidence to point to common law dedication. To be sure, the court could have gleaned from appellant's case fairly obvious intent to make an unequivocal offer. Relocation and construction of the lines to the City's specifications and their long-term use by the subdivision landowners and maintenance by the City, combined with offer and acceptance, would constitute dedication under many circumstances. Nevertheless, substantial evidence exists to show that the City did not accept the exact offer appellant made, either by implication or by executing formal instruments reflecting a meeting of the minds. Evidence also shows that the resulting use, moreover, may be too limited in scope to be considered public use. Because of this conflicting evidence, we believe the issue of dedication is best resolved by a jury, and we vacate the trial court's judgment and remand.

## II

The trial court also jumped the gun, moreover, by finding for the City on the basis of prescriptive easement. At first blush, the City's long history of using the lines might have lulled the court below into inferring that the City has an easement, for "[i]mplying a dedication solely through long public use without regard to any intent to dedicate on the part of the landowner is but a form of prescription." *Mayor & Council of Ocean City,* 274 Md. at 8, 332 A.2d 630 (citing *Mt. Sinai Nursing Home, Inc. v. Pleasant Manor Corp.,* 254 Md. 1, 5–6, 253 A.2d 915 (1969)). But aside from proof of long use—twenty years in this State—a finding of prescription also requires proof that use has been exclusive, uninterrupted, and adverse. *Shuggars v. Brake,* 248 Md. 38, 45, 234 A.2d 752 (1967); *Condry v. Laurie,* 184 Md. 317, 321, 41 A.2d 66 (1945); *Mahoney v. Devonshire, Inc.,* 86 Md.App. 624, 628, 587 A.2d 1146 (1991). It is the latter element that proves to be the Achilles' heel of the court's analysis.

Continued use and enjoyment of a private street or road by the public over the appropriate length of time will

establish the existence of a public way by prescription. *Mt. Sinai,* 254 Md. at 5–6, 253 A.2d 915 (distinguishing prescription from dedication) (" 'It is certainly a settled doctrine in this State that public roads or ways of any kind can only be established by public authority, or by dedication, or by long user [*sic* ] by the public, which, though not strictly prescription, yet bears so close an analogy to it that it is not inappropriate to apply to the right thus acquired the term prescriptive. Hence the existence of a public way may be established by evidence of an uninterrupted user [*sic* ] by the public for twenty years; the presumption being that such long continued use and enjoyment by the public of such way had a legal rather than an illegal origin.' ") (quoting *Thomas v. Ford,* 63 Md. 346, 351–352 (1885)); *cf. Canton Co. of Baltimore v. Mayor & City Council of Baltimore,* 104 Md. 582, 65 A. 324 (1906) (finding dedication to city for street built by private company after the city treated the street as its own for 20 years). Such long-term use is adverse if the user enters upon the property " 'without license or permission, for an adverse right of an easement cannot grow out of a mere permissive enjoyment, the real point of distinction being between a permissive or tolerated user, and one which is claimed as a matter of right.' " *Mahoney,* 86 Md.App. at 635, 587 A.2d 1146 (quoting *Kiler v. Beam,* 74 Md.App. 636, 639, 539 A.2d 1138 (1988)).

Appellant does not contest the City's continuous use of the lines for a period greater than twenty years. Beyond showing a long period of use, the record developed during appellant's case alone nearly establishes the other elements.[13] We have

13. Because the City, which moved for judgment before putting on its case, had the burden of proving its prescriptive easement, *see Mavromoustakos v. Padussis,* 112 Md.App. 59, 65, 684 A.2d 51 (1996) ("The burden of proof is on the claimant of the easement to show that it has had the character and is of the duration required by law.") (citing *Dalton v. Real Estate Imp. Co.,* 201 Md. 34, 40–41, 92 A.2d 585 (1952)), appellant labels as "improbable" the trial court's grant of appellees' motions "before the production of any evidence by the alleged prescriptive user for the purpose of meeting its burden of proof." Though improbable, such a grant is not impossible when, as here, the party

little doubt, for example, that the City's use of the lines was exclusive, for the record shows that the City had an independent claim of right for that usage. *See Mahoney,* 86 Md.App. at 636, 587 A.2d 1146 (" 'By *exclusive* the law does not mean that the right of way must be used by one person only, because two or more persons may be entitled to the use of the same way, but simply that the right should not depend for its enjoyment upon a similar right in others, and that the party claiming it exercises it under some claim existing in his favor, independent of all others . . . .' ") (quoting *Kiler,* 74 Md.App. at 639, 539 A.2d 1138) (emphasis in original). During the trial, both Gene Watzl, Manager of the City Water Department, and Rick Thomas, Manager of the City Water Pollution Control Department, testified that the water and sewer lines in controversy were maintained and repaired by the City in its capacity as a public utility provider. Although appellant now counters that the City merely flushed and monitored those lines and has done little more to them since construction, such an assertion does not show a lack of claim in our view. Arguably, no requirement for major maintenance or reconstruction work has arisen since the lines were installed, and the City has merely treated the lines as it treats other well-functioning components of its water and sewer system. Appellant also asserts that use of the lines by the residents of the subdivisions served stands in the way of a finding of exclusive use. Appellant's objection ignores our longstanding definition of exclusivity itself. The City's claim of an exclusive right does not depend upon others' lack of similar rights. The objection, we think, also ignores the shared nature of utility infrastructure—utility lines serving a community are hardly equivalent to a backyard alley that gives but a single neighbor access to the main thoroughfare. Instead, the evidence adduced in appellant's own case seems to show that the City treated the lines as it did other comparable lines in the system it owned,

---

opposing the motion for judgment puts on some of the very evidence that the movant would have presented to make his own case.

establishing a form of exclusive use consistent with that of a public utility provider.

Appellant's case also shows that the City's twenty-year exclusive use of the lines was continuous. Proof of uninter-rupted use is fairly patent in the record, for the testimony disclosed that the City's use and maintenance of the lines began immediately after construction in 1974.[14] Conversely, the record does not show any attempt by appellant or anyone else to interrupt the City's use.

On the issue of whether the City's use had been adverse, however, the court's analysis broke down, and appel-lant arguably set forth evidence that could satisfy the shifting burden of proof. *See Kirby v. Hook,* 347 Md. 380, 392, 701 A.2d 397 (1997) ("When a person has used a right of way openly, continuously, and without explanation for twenty years, it is presumed that the use has been adverse under a claim of right. The burden then shifts to the landowner to show that the use was permissive.") (citing *Cox v. Forrest,* 60 Md. 74, 80 (1883)). Use is adverse if it occurs without license or permission. *Kirby,* 347 Md. at 392, 701 A.2d 397 (citing *Condry,* 184 Md. at 321, 41 A.2d 66).

Appellant here argues that the City enjoyed licensed or permissive use of the type that "can never ripen into a prescriptive easement." *Kirby,* 347 Md. at 393, 701 A.2d 397. Appellant points to "evidence at trial from which a jury could have found that the City's use of utility lines and Lorich easement was ... permissive in origin," including a snippet of Sheedy's testimony stating that it had *requested* municipal water and sewer service from the City and the City had provided that service. It calls our attention to *Mayor & City Council of Baltimore v. Brack,* 175 Md. 615, 619–23, 3 A.2d 471 (1939), in which the Court of Appeals held that a revocable license (and not an easement or dedication) had been created

---

**14.** Additionally, testimony showed that the City began approving and attaching other users to these lines as early as October 8, 1974, when it approved an application for service submitted by Heritage Builders, Inc.

when a property owner gave oral permission for the City to install utility lines over his property. Appellant also highlights *several* points during Sheedy's testimony, reproduced *supra*, when that witness stressed that it had retained ownership of the lines and *no* agreement between the City and appellant was in place to dedicate those lines to public use. Sheedy's testimony during appellant's case places the issue of whether the City's use of the lines was adverse squarely within the province of the jury. *Thodos*, 75 Md.App. at 713–14, 542 A.2d 1307 ("The determination whether appellant met her burden of proof is a matter entrusted solely to the jury. Although the trial judge, in ruling on a motion for judgment, must assess the sufficiency of the evidence to generate a jury question, once he or she has done so, it is up to the jury to determine the ultimate question, whether the burden of proof has been met.") (citing *Impala Platinum Ltd. v. Impala Sales (U.S.A.), Inc.*, 283 Md. 296, 326–27, 389 A.2d 887 (1978)).

Even if it were entirely clear that the City had an easement in the lines, moreover, the question of the scope of that easement would still be outstanding. Appellant has raised valid questions regarding whether development efforts by appellee Potomac Ridge would impermissibly broaden the scope of the easement or overburden that easement:

It has been established that "[w]hen an easement has been acquired by prescription, the character and extent of the use permissible are commensurate with and determined by the character and extent of the use during the prescriptive period." . . . "[A] restriction in a grant or an express reservation must be given effect to its full extent, properly construed. But there is nothing in the nature of a right reserved or an easement, apart from an express prohibition, which prevents all change during the course of its enjoyment."

*See Mahoney*, 86 Md.App. at 628–29, 587 A.2d 1146 (quoting *Bishields v. Campbell*, 200 Md. 622, 625, 91 A.2d 922 (1952); *Tong v. Feldman*, 152 Md. 398, 403, 136 A. 822 (1927)) (emphasis omitted) (citations omitted); *see also Hoffman v.*

*United Iron & Metal Co.,* 108 Md.App. 117, 135 n. 8, 671 A.2d 55 (1996) (" 'To acquire [a] right ... by prescription, the [prescriptive right] must have been maintained in substantially the same manner ... throughout the entire prescriptive period....'") (*Cook Indus., Inc. v. Carlson,* 334 F.Supp. 809, 818 (N.D.Miss.1971)); *Kiler,* 74 Md.App. at 640, 539 A.2d 1138 ("the type of usage may not be increased just because the use has ripened into a prescriptive right"). We note that the question of scope is for the trial court alone, rather than the jury. *See Mahoney,* 86 Md.App. at 639, 587 A.2d 1146.

**JUDGMENT VACATED & CASE REMANDED TO THE CIRCUIT COURT FOR WASHINGTON COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY APPELLEES.**